# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## ON MOTION FOR REHEARING

========================

## NO. 03-09-00668-CR
### NO. 03-09-00669-CR

**Sammie Lee Ford Jr., Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NOS. CR22,296 & CR22,297, HONORABLE ED MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Sammie Lee Ford, Jr. filed a motion for rehearing complaining that we had misconstrued one of his arguments, that we did not address one of his points of error, and that we should have held that he received ineffective assistance of counsel. We withdraw our opinion and judgments dated April 21, 2011, and substitute the following opinion and judgments in their place.

A jury convicted Ford of aggravated robbery (cause number 03-09-00668-CR) and possession of more than 400 grams of a controlled substance with intent to deliver (cause number 03-09-00669-CR). *See* Tex. Penal Code Ann. §§ 29.02(a), .03(a) (West 2003) (robbery and aggravated robbery); Tex. Health & Safety Code Ann. § 481.112 (f) (West 2010) (drug possession). The trial court sentenced Ford to forty years' imprisonment for each offense,

providing that the sentences should run concurrently. *See* Tex. Penal Code Ann. § 12.32 (West Supp. 2009) (punishment ranges for first-degree felonies). Ford's appellate attorney filed a brief asserting that the appeal is frivolous and without merit and a motion seeking leave to withdraw as counsel. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Jackson v. State*, 485 S.W.2d 553, 553 (Tex. Crim. App. 1972). In response, Ford filed a pro se brief asserting fifteen points of error. We affirm the trial court's judgments of conviction.

## Summary of the Evidence

Maria Gamino testified that at about midnight on August 26, 2008, she was asleep in her bedroom in Cameron, Texas, with her three-year-old son. Jose Llanas, her then-fiancé, from whom she has since separated, was in the living room. According to Gamino, she woke to yelling and saw two men push Llanas into the bedroom. The men pushed Llanas to the ground and tied his hands with black plastic "zip-ties." Both men were African-American and were armed and dressed in dark clothing, with t-shirts wrapped around their faces. The taller man did most of the talking and wore black and red Air Jordan shoes. Gamino testified that she heard the taller man's voice clearly, saying, "It was unique because it was so deep, very masculine." Gamino feared the men were going to kill her and her son, but instead they ransacked the house and stole two cell phones, a camcorder, about $1,800 in cash, her son's piggy-bank, and the keys to a Ford truck. After the intruders left, Gamino cut the ties from Llanas's hands and ran to the house of a trooper who lived down the street.

Gamino testified that the next day, two people she did not know told Llanas that a man named Sammie Ford had robbed them and that he was staying at a Best Western Motel in Rockdale and had tried to sell them a camcorder. Gamino gave that information to the police

2

and drove with Llanas to Rockdale to go to Wal-Mart. They pulled into a restaurant in Rockdale, and Llanas saw Ford inside and recognized him as one of the men who had robbed them. Llanas confronted Ford, who denied any involvement. Gamino did not recognize Ford's face, but when she heard him speak, she "knew that it was the same person that had been inside my house."

Police witnesses testified that the police were called to the scene and that Ford was eventually arrested. The police found "a large quantity of cash in his pockets," along with a key card for a room at the Best Western. Ford asked that the room key be given to his wife, Christina Ford. The police interviewed Christina Ford, who said Ford told her he had "hit a lick," meaning he "had robbed some Mexicans over in Cameron earlier that day." She also gave the police permission to search the motel room. The police obtained a warrant and searched Ford's room, where they found dark clothing, red and black Air Jordans, and black plastic zip-ties that matched those used in the robbery. They also found a digital scale, a brick of cocaine weighing about one kilogram, and more than $3,000 in cash; they did not recover any of the stolen items. Two days after the robbery, Llanas was arrested while driving a car containing a large quantity of cocaine and sentenced to federal prison for drug trafficking. The State argued that Llanas was a drug dealer whose supply was stolen by Ford and Ford's accomplice and who was returning from replenishing his supply when he was arrested two days later. There was testimony that the police had suspected for some time that Llanas was dealing drugs and was using Gamino's house as a "stash house" for his drug supply. Gamino denied knowing that Llanas was dealing drugs or might have hidden drugs in her house.

Christina Ford testified that at the time of the robbery, she and Ford had been separated for a month or two. The morning after the robbery, Ford asked her to go with him to pay some bills. They got Ford's vehicle out of impound, where it had been for about two months, and

3

retrieved some items from a pawnshop. Ford then got a room at the Best Western, and later in the day, Christina Ford and her daughter went to the motel to go swimming. While she was in Ford's room, she saw cash, bags of drugs, and a brick of cocaine. She asked Ford where he had gotten the drugs, and he said he had "hit a lick."

### Ford's Points of Error

In his first point of error, Ford complains that the evidence is insufficient to support the robbery conviction.[1] Specifically, he argues that no physical evidence tied him to the robbery.[2] Although the stolen property was not found in Ford's possession, Gamino testified that two men broke into her house and robbed her and Llanas at gunpoint, putting her in fear for her and her son's lives, and that she and Llanas saw one of the men the next day; Llanas recognized Ford's face, and she recognized his voice. Further, Llanas was told that a man named Sammie Ford had committed the robbery. Finally, Ford's wife testified that Ford told her that he had robbed "some

---

[1] Ford complains that the evidence is legally and factually insufficient, but the court of criminal appeals recently held that the "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

[2] It is not entirely clear whether Ford intended to complain about the evidence supporting the drug conviction, but in his argument, he states only that the charges should not have been consolidated and does not attack the evidentiary support for the drug conviction. We therefore assume Ford attacks only the evidence supporting the robbery conviction. However, even if he had attacked the drug conviction, the evidence is sufficient to show that Ford had custody and control over the motel room and its contents and thus to support the drug conviction: when the police executed their search warrant on the motel room, they found large quantities of drugs, cash, and a digital scale; the room was rented by Ford, who gave his wife the room key; Ford's wife gave the key to the police and told them she had seen drugs and money in the room. *See Armstrong v. State*, 82 S.W.3d 444, 449 (Tex. App.—Austin 2002, pet. ref'd) (totality of circumstances must show defendant's knowledge of and control over drugs).

Mexicans" in Cameron, she saw a large quantity of cash in Ford's motel room, and the day after the robbery, Ford had enough money to retrieve his car from impound and get some property from a pawnshop. The evidence is sufficient to support the aggravated robbery verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("[d]irect and circumstantial evidence are treated equally").

Ford argues in his second point of error that his warrantless arrest was improper because there was no probable cause to arrest him for robbery. However, Llanas recognized Ford's face and Gamino recognized his voice. Ford had a vehicle at his disposal that would allow him to leave the scene if not detained for investigation. This evidence provided a sufficient basis for the police to arrest Ford for the felony of aggravated robbery. *See* Tex. Code Crim. Proc. Ann. art. 14.04 (West 2005) ("Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."); *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (police may make warrantless arrest if there is probable cause and arrest falls within exception to warrant requirement).

In his third and fourth points of error, Ford complains that the search warrant was improper because the police lacked probable cause and because the warrant did not place limits on the search and instead allowed "general exploratory rummaging." He argues that there was no corroboration of the information that Ford had tried to sell a camcorder to the unidentified people. The affidavit recites that Llanas and Gamino learned Ford's name from the unidentified people, but it also states that Llanas and Gamino recognized Ford in the Rockdale restaurant, that Christina Ford told the police that Ford had admitted to committing a robbery in Cameron, that she saw large

sums of cash and cocaine in the motel room, and that, when confronted by "Mexicans" at the restaurant, Ford said "those are the Mexicans I hit the lick from." The affidavit relied on more than the anonymous tip and provided sufficient probable cause for the magistrate to believe that the stolen items might be found in the motel room. *See Rodriguez v. State*, 232 S.W.3d 55, 59-60 (Tex. Crim. App. 2007) (search warrant should be upheld if affidavit provided magistrate with probable cause that particular item will be found in particular location); *Hespeth v. State*, 249 S.W.3d 732, 736-37 (Tex. App.—Austin 2008, pet. ref'd) (courts should defer to magistrate and uphold warrant if magistrate had substantial basis to conclude search would uncover evidence of specific crime and if affidavit established probable cause).

In his third point of error, Ford complains that the search of his motel room was improper because the search warrant did not put limits on the search and instead allowed the police to do "general exploratory rummaging." On rehearing, Ford argues that the warrant did not particularly describe the items that were to be seized and the place or things to be searched. However, although a search warrant may not allow unfettered discretion to "burrow through a person's possessions looking for any evidence of a crime," a warrant is proper if it provides enough specifics that the officer executing the warrant will "reasonably know what items are to be seized." *Porath v. State*, 148 S.W.3d 402, 410 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The warrant refers to the affidavit prepared by Officer White, in which White listed a piggy bank, two cell phones, a video camera, and about $1,800 in cash as stolen items that were believed to be in the motel room. White recited that Gamino and Llanas reported the robbery and told the police that "a friend who wished to remain anonymous" told them Ford had tried to sell the friend a stolen video camera. In his description of the robbery, White mentioned black zip-ties and "firearms

6

(pistols)," and he also averred that Gamino spotted Ford at a restaurant in Rockdale and called the police to report Ford's whereabouts. White averred that Ford's wife told the police Ford admitted to committing a robbery in Cameron, she saw large amounts of cash and cocaine in Ford's motel room, and she believed Ford had placed a gun in his backpack. The warrant allowed the police to "enter the suspected place described in said Affidavit and to there search for personal property described in said Affidavit." In the search, the police seized zip-ties, digital scales, four plastic bags of cocaine, one "[gray] taped cocaine package," a "[gray] roll duct tape," one plastic bag of marihuana, a backpack, a pair of shoes, dark clothing, and a "Wal-Mart Visa" in Ford's name.

Contrary to Ford's arguments, the warrant was sufficiently specific. It referred to the affidavit, which listed the specific items stolen from Gamino or Llanas, mentioned that black plastic ties were used in the robbery, and stated that drugs, firearms, and cash were believed to be in the motel room. The police could search anywhere in the motel room where such items might be concealed. The warrant was sufficiently specific in its instructions that the police should search Ford's motel room for drugs, cash, and evidence related to the robbery. *See id.*

On rehearing, Ford asserts that we neglected to address his eleventh point of error, in which he argues that the trial court should have granted his motion to suppress. Although we did not specifically state that we were addressing his eleventh point, we did address whether Ford's motion to suppress should have been granted, an argument that is made in several of his points and that is an overarching issue related to the propriety of the search as a whole. Ford asserts that the police did not obtain Gamino's identification of Ford and that "[n]o evidence of a robbery was presented to show the right person was arrested." He asserts that the police improperly secreted witnesses and that several witnesses were not called to testify at the suppression hearing. However,

7

there is no requirement that the State call all of its witnesses at a suppression hearing, and as noted above, the State provided sufficient evidence to support both the arrest and the warrant. Therefore, the evidence seized through Ford's arrest and the search of his motel room was properly obtained.

Ford next complains that his double-jeopardy rights were violated when he was retried on the drug possession charge after an initial trial that resulted in a hung jury. He also argues that the same evidence was used to prove both drug possession and aggravated robbery and that the State improperly sought two convictions when the evidence showed only one offense was committed. However, aggravated robbery is a crime distinct from drug possession, and there is no bar against one piece of evidence being used to prove more than one offense, especially when the two offenses are related in some way, as was the case here. As to the hung jury, "[t]he law regarding double jeopardy in such cases is well-settled. A trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which a defendant is subjected." *Ex parte Cantu*, 120 S.W.3d 519, 521 (Tex. App.—Corpus Christi 2003, no pet.) (citations omitted).

Ford further contends that his rights were violated when the State consolidated the drug possession and robbery charges for trial.[3] He asserts that because Gamino and Llanas did not tell the police that drugs had been stolen in the robbery, the police improperly tied the two charges together. However, because the charges involve overlapping evidence and testimony, it was more efficient to try the charges together rather than going through two trials, and section 3.02 of the penal code allows the consolidation of criminal charges. *See* Tex. Penal Code Ann. § 3.02 (West 2003). Although a defendant may request a severance of consolidated charges under

---

[3] Ford also asserts that the State committed misconduct by presenting false evidence, but there is nothing in the record to support that assertion.

8

section 3.04, Ford did not object to the consolidation or seek a severance. *See id.* § 3.04(a) (West Supp. 2010). Nor has Ford shown how he was harmed by having the causes consolidated. *See* Tex. R. App. P. 44.2(b). Ford received identical sentences that were set to run concurrently, whereas with separate trials he might have received longer sentences or had his sentences set to run consecutively.

Ford raises several points complaining that his confrontation rights were violated. He argues that the State should have identified and called as witnesses the people who gave Llanas Ford's name and complains that because the State did not call Llanas, who was in federal prison, Ford was denied the opportunity to cross-examine him. The confrontation clause bars the use of "out-of-court testimonial statements by a witness unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *Martinez v. State*, 327 S.W.3d 727, 738 (Tex. Crim. App. 2010). The State did not present "out-of-court testimonial statements" by Llanas or the people who gave Llanas Ford's name. *See id.*[4]

In his eighth point, Ford complains that only two officers testified at the hearing on his motion to suppress, arguing that the State should have presented all of its witnesses. However, a suppression hearing addresses only the propriety of the seizure of evidence, and the State is not obligated to present its entire case or all its witnesses. In his ninth point, Ford complains that the

_____

[4] Ford also asserts that the State "secreted witnesses" because there was testimony in Ford's earlier trial, which ended with a hung jury, that the cocaine was tested and handled by crime labs in both Waco and Austin. However, that evidence was not introduced in the trial at issue here, and we cannot consider evidence that was not introduced into this record. *See Lewis v. State*, 504 S.W.2d 900, 904 (Tex. Crim. App. 1974). Further, Ford has not explained how the analysis by more than one lab or technician harmed him, other than to assert that there was a broken chain of custody for the evidence, an assertion not supported by the record.

State did not ask Ford's wife whether she knew anything about the robbery, arguing that because there was no evidence that she saw any of the stolen items or knew about the robbery, her testimony was improper. However, Ford's wife testified about seeing drugs and cash in the motel room, as well as Ford's statements to her that he had committed a robbery the day before. Her ignorance of the details of the robbery or the items stolen does not render her testimony improper.

Ford complains in his tenth point that the trial court should have admitted notes from a police interview with Llanas after the robbery. Ford's attorney attempted to introduce the police report in an attempt to show that Llanas was lying about the robbery, but the State objected that the report contained hearsay and that Llanas was not there to testify about what he actually said or what he meant to say. The trial court sustained the State's objection, which Ford complains shifted the burden from the State to Ford. Even if there was merit to this contention, Ford has not shown how the report would have aided his defense, much less that his defense was prejudiced by the exclusion of the report or that his constitutional rights were violated. *See* Tex. R. App. P. 44.2(b).

Ford contends in his twelfth point that the State made prejudicial comments during its closing arguments when it referred to Cedric Barnes as Ford's accomplice despite the fact that Barnes was not charged. "The approved general areas of argument are: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). In his closing arguments, Ford's attorney argued that the State's witnesses were lying and said, "And then [Gamino] tells you on the witness stand yesterday that while all this was going on, the shorter person, who's supposed to be this guy Cedric Barnes—who is listed as a suspect and was apparently

questioned about it and has never been arrested for it—is the one that pointed the gun at her and her son." Later in his arguments, he referred again to Barnes, saying Barnes "apparently, for all purposes now, is in El Paso someplace." The State's rebuttal addressed the fact that Gamino and Llanas said two men had robbed them, saying, "[W]hat about Cedric Barnes? What's going to happen to him? . . . You may not know what happens to him. Everybody gets their day in court. Today is Sammie Lee Ford, Jr.'s day in court, and that's what you're here to decide." The State's reference to Barnes was in answer to Ford's argument and was not erroneous. *See id.*

In his thirteenth point, Ford argues that the State improperly seized Ford's property through a forfeiture proceeding, that it did not prove the property was derived from illegal activities, and that Ford was not granted a civil trial as he requested. A forfeiture is a civil proceeding distinct from a criminal prosecution. *See Gambling Paraphernalia, Devices, Equip., & Proceeds v. State*, 22 S.W.3d 625, 627 (Tex. App.—Dallas 2000, no pet.); *see also Beasley v. State*, 5 S.W.3d 812, 814 (Tex. App.—San Antonio 1999, pet. ref'd) (forfeiture filed separate from criminal proceeding). Whether the forfeiture proceeding was proper is not before us in this cause.

Finally, in his last two points of error, Ford complains that he received ineffective assistance of counsel at trial and on appeal. He argues trial counsel should have: moved for a directed verdict because the evidence was legally insufficient, objected to the State's calling only two witnesses at the suppression hearing, investigated other potential witnesses, objected to the consolidation of the two prosecutions, properly argued Ford's motion to suppress, and attacked the warrantless arrest. He also raises other complaints similar to those asserted in his pro se brief. We have considered Ford's pro se complaints and have explained why they lack merit. We have also reviewed the trial court record and hold that Ford received effective assistance throughout his trial.

11

Similarly, because we agree with appellate counsel that there are no grounds for reversal, counsel did not provide ineffective assistance to Ford on appeal.

## Conclusion

We have considered the record, Ford's pro se complaints, and the brief filed by Ford's attorney and agree that the appeal is frivolous and without merit.[5] Accordingly, we overrule Ford's motion for rehearing, grant Ford's attorney's motion to withdraw, and affirm Ford's convictions.[6]

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed on Motion for Rehearing

Filed:   September 22, 2011

Do Not Publish

_____

[5]  Because the brief presents a professional evaluation of the record and demonstrates that there are no arguable grounds to be advanced, the brief meets the requirements articulated in *Anders v. California*, 386 U.S. 738, 743-44 (1967). *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *High v. State*, 573 S.W.2d 807, 811-13 (Tex. Crim. App. 1978).

[6]  No substitute counsel will be appointed.  Should Ford wish to seek further review of his case by the court of criminal appeals, he must either retain an attorney to file a petition for discretionary review or file a pro se petition for discretionary review. *See generally* Tex. R. App. P. 68-79 (governing proceedings in Texas Court of Criminal Appeals).  Any petition for discretionary review must be filed within thirty days from the date of either this opinion or the date this Court overrules the last timely motion for rehearing filed. *See id.* R. 68.2.  The petition must be filed with this Court, after which it will be forwarded to the court of criminal appeals along with the rest of the filings in this case. *See id.* R. 68.3, 68.7.  Any petition for discretionary review should comply with rules 68.4 and 68.5 of the rules of appellate procedure. *See id.* R. 68.4, 68.5.